UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ROBERT F. HEGARTY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No. 19-cv-06006-MMC   (RMI)<br><br>**ORDER RE: DISCOVERY DISPUTE**<br>Re: Dkt. Nos. 99, 101 |

Now pending before the court is a jointly-filed letter brief (dkt. 101) presenting a discovery dispute through which Plaintiff seeks to compel the production of certain documents and information. This dispute, and any further discovery disputes, have been referred (*see* dkt. 100) to the undersigned. Further, until a ruling is rendered on Defendant's initial motion for summary judgment, Judge Chesney has limited the scope of discovery to the issue of whether Plaintiff's claims are barred by the settlement in *Oakes v. Bankers United Life Assurance Co.*, Case No. 96-06849 (192nd Dist. Ct., Dallas County, Texas) ("*Oakes*"). For the reasons stated below, Plaintiff's request to compel the discovery in question is denied.[1]

**BACKGROUND**

In 1989, when he was 48 years old, Plaintiff purchased a direct recognition life vanishing premium insurance contract from the General Services Life Insurance Company – the predecessor in interest to Defendant Transamerica Life Insurance Company. *See* Compl. (dkt. 1) at 2. Plaintiff contends that he was guaranteed certain increases to the cash value of this policy, generally known

---

[1] Pursuant to Civil Local R. 7-1(b), the court finds that this matter is suitable for disposition without oral argument.

as "persistency bonuses," on the twentieth, thirtieth, and fortieth anniversaries of the inception date of his insurance contract. *Id*. Plaintiff's lawsuit is premised on the assertion that Defendant breached the contract by repudiating the 30th and 40th anniversary bonuses in 2016 – which Plaintiff contends amounted to a breach of contract, unfair and deceptive business practices, and elder abuse. *See* Ltr. Br. (dkt. 101) at 2. Defendant denies these allegations and contends that Plaintiff's claims were released by the August 2000 class action settlement in *Oakes*. *Id*.

In the preface to the Parties' letter brief, they jointly set forth the following: (1) that the currently applicable scope of discovery is limited to the question of whether Plaintiff's claims are barred by *Oakes*; (2) that following the resolution of this discovery dispute and the production of any resulting discovery, Defendant will file its summary judgment motion on the limited issue of whether Plaintiff's claims are barred by the terms of the settlement in *Oakes*; (3) that Plaintiff's assertions of estoppel and waiver will not be considered in connection with that motion; (4) if it is later determined that *Oakes* covers any of Plaintiff's claims, he would then be permitted discovery related to his waiver and estoppel assertions and, if appropriate, Plaintiff would then be able to move for summary judgment on those grounds; and, (5) if, on the other hand, the court concludes that none of Plaintiff's claims are barred by *Oakes*, then discovery concerning estoppel and waiver would be unnecessary, but discovery related to any remaining claims or defenses could be conducted. *Id*.

As for the settlement agreement in *Oakes*, the undersigned has carefully reviewed the copy which Plaintiff has filed on the docket of this case (*see* Hegarty Decl., Exh. J (dkt. 21-4) at 127-98), albeit, with the exception of the one missing page (*see id*. at 158). The *Oakes* Settlement's release and waiver provisions define the term "Releasees" as including, *inter alia*, the defendant in that case and any of its successors and assigns. *Id*. at 175. Through the release provision of the *Oakes* Settlement, each class member individually agreed to "forever release and discharge the Releasees from any and all causes of action . . . on the basis of, connected with, arising out of, or related to, in whole or in part, the Policies, the Released Transactions . . . which include without limitation . . . the nature, design, characteristics, actuarial and pricing assumptions, terms, *bonuses* . . . [and] the Companies' policies and practices regarding dividends, account values, policy loans,

1  interest and other policy crediting . . . [and] *persistency*, *or other policy bonuses* . . ." *Id.* at 176-77
2  (emphases added).

## LEGAL STANDARDS

When moving to compel discovery, the moving party has the burden of demonstrating relevance. *See e.g.*, *Amy v. Curtis*, No. 19-cv-02184-PJH (RMI), 2021 U.S. Dist. LEXIS 27543, at *5 (N.D. Cal. Feb. 12, 2021); *see also Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Within the framework of the narrowed scope of discovery that is currently applicable in this case, it should be noted that "[w]hile it is true that the standard for relevance is not very demanding (*see* Fed. R. Evid. 401 – evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action), the rule still requires that any evidence that is to be offered must 'logically advance a material aspect of the party's case.'" *In re Glumetza Antitrust Litig.*, No. 19-cv-05822-WHA (RMI), 2020 U.S. Dist. LEXIS 113361, at *31-32 (N.D. Cal. June 29, 2020) (quoting *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014)).

Additionally, in order to succeed on a motion to compel, a moving party bears the burden of not only demonstrating the above-described entitlement to the requested discovery, but also that it has satisfied proportionality and other requirements of Rule 26. *See Rodriguez v. Barrita, Inc.*, No. 09-04057 RS-PSG, 2011 U.S. Dist. LEXIS 134079, at *4 (N.D. Cal. Nov. 21, 2011). In light of this, courts are required to limit discovery if its burden or expense outweighs its likely benefit; this is "the essence of proportionality," a frequently ignored or overlooked discovery principle. *In re Glumetza Antitrust Litig.*, 2020 U.S. Dist. LEXIS 113361, at *31-32 (citing *Apple Inc. v. Samsung Elecs. Co.*, No. 12-cv-0630-LHK (PSG), 2013 U.S. Dist. LEXIS 116493, at *34-36 (N.D. Cal. Aug. 14, 2013)).

## DISCUSSION

One thing that is clear from reviewing the Parties' letter brief is the fact that Plaintiff is displeased with the narrowed scope of discovery – accordingly, it appears that Plaintiff is striving to expand that scope by asserting that the *Oakes* Settlement was attended with "potential latent ambiguities" as well as "multiple actual ambiguities in both the *Oakes* [S]ettlement and Hegarty's

United States District Court
Northern District of California

3

Insurance Contract." *Id.* at 3. As such, Plaintiff's requests to compel are largely, if not entirely, focused on fishing for extrinsic evidence relating to his insurance contract and the *Oakes* Settlement in what appears to be an effort at making an end-run around the narrowed discovery scope. To this end, Plaintiff's portion of the letter brief opens with a series of generalized statements that do not do much to advance Plaintiff's apparent objective. In this regard, Plaintiff asserts: (1) that federal courts treat discovery relevancy liberally; (2) that a court's primary task when interpreting a written contract is to determine the parties' intent during contract formation; (3) that contract language is often construed in its lexical environment, which may include objectively determinable facts and circumstances that contextualize the parties' transaction; (4) that context can be used to reveal a latent ambiguity even though extrinsic evidence of intent alone cannot be used to create it; (5) that a judicial determination of ambiguity is not a prerequisite to discovering extrinsic evidence of party intent; and, (6) without any explanation, Plaintiff contends that "intent is relevant to Hegarty's fraud/elder abuse claims and no ambiguities are needed for those claims. *Id.* at 3.[2]

Plaintiff then provides four examples of supposed ambiguities that might justify his sweeping requests for extrinsic evidence. First, Plaintiff rhetorically asks whether persistency bonuses are an express written term of a policy form issued by Defendants such that they are expressly excepted from release under settlement Section H.1.b.2. *Id.* at 3-4. The undersigned finds no merit to this suggestion because the terms, "persistency, or other bonuses," are expressly accounted for in Section H.1.b.1(15), and also because Section H.1.b.2 unambiguously provides

---

[2] The Parties agree that Texas law governs the interpretation of the *Oakes* Settlement. *See* Ltr. Br. (dkt. 101) at 3, 5. That said, the undersigned is unpersuaded by Plaintiff's suggestion that broad-based discovery of extrinsic evidence might reveal some "latent ambiguity," because "[w]hen the contract is not ambiguous on its face, extrinsic evidence may not be used to create an ambiguity." *Transcon. Gas Pipeline Corp. v. Texaco, Inc.*, 35 S.W.3d 658, 665 (Tex. App. 2000). If a written instrument is so worded that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous, and extrinsic evidence is not admissible. *R & P Enterprises v. LaGuarta, Gavrel and Kirk*, 596 S.W.2d 517, 519 (Tex. 1980). On the other hand, "a contract is ambiguous if the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain as to which one of two or more meanings is proper." *Maxwell v. Lake*, 674 S.W.2d 795, 801 (Tex. App. 1984) (citing *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154 (1951)). Only in such a situation is extraneous evidence admissible to determine the true meaning of the instrument. *LaGuarta*, 596 S.W.2d at 519. Simply because Plaintiff voices disagreement over the interpretation of the instrument does not make it automatically ambiguous. *See id.* (citing *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726 (Tex. 1982)).

that "[u]nder no circumstance shall this Section H.1.b.2 entitle a Class Member to assert claims that relate to the allegations contained in the Action *or to matters described in Section H.1*. *See* Hegarty Decl., Exh. J (dkt. 21-4) at 176-78 (emphasis added). There is no ambiguity here and Plaintiff's effort to create one is unpersuasive. Plaintiff's second example of an ambiguity is to suggest that an illustration that was attached to his insurance contract constitutes a "policy form" as the term is used in Section H.1.b.2 of the Settlement Agreement, such that it might constitute an exception from the claims released by class members. *See* Ltr. Br. (dkt. 101) at 4. However, in Section H.1.b, "illustrations" are expressly included among "sales presentations" and "oral or written statements or representations allegedly made in connection with, or directly or indirectly relating to, the Released Transactions"; and, furthermore, illustrations are again provided for in Section H.1.b(15) ("*illustrations* of dividend, interest and other policy crediting rates, interest, persistency, or other policy bonuses, account equity rates, account value calculations, policy loans, policy charges, premium charges, monthly deductions, market value adjustments, cost of insurance and administrative charges, cash values, ultimate cash values or death benefits . . ."). *See* Hegarty Decl., Exh. J (dkt. 21-4) at 176-77 (emphasis added). As mentioned, there is no ambiguity here, and Plaintiff's attempt to identify one is ineffectual. Plaintiff's third "example" of an ambiguity suggests that Section H.1's "limited reference" to persistency bonuses might not include and contemplate "guaranteed persistency bonuses" rather than "non-guaranteed persistency bonuses." *See* Ltr. Br. (dkt. 101) at 4. Likewise, this argument is meritless due to the repetitive appearance of the prominently-underlined phrase, "without limitation," which appears twice in Section H.b.1 and once in Section H.1.b.1.b – it therefore becomes clear that Plaintiff is simply grasping at straws because "without limitation" means "without limitation," and when one refers to "persistency bonuses," "without limitation," the objectively clear understanding is that the reference includes every type of "persistency bonuses." *See See* Hegarty Decl., Exh. J (dkt. 21-4) at 176. Plaintiff's fourth and final example of a purported ambiguity that might justify extrinsic evidence is to suggest that a release of persistency bonuses under Section H might impermissibly "alter" the insurance contracts covered by the Settlement Agreement in violation of Section M.21. *See* Ltr. Br. (dkt. 101) at 4. Section M of the Settlement Agreement sets forth certain "General

5

Matters and Reservations," and subsection 21 specifically provides that "[n]either this Agreement nor any of the relief to be offered under the Stipulation of Settlement shall be interpreted to alter in any way the contractual terms of any Policy or to constitute a novation of any Policy." *See* Hegarty Decl., Exh. J (dkt. 21-4) at 189, 195. Again, Plaintiff's effort to drum up an ambiguity where none exists is based on a shifting use of terminology and an unfair reading of Section M.21 of the Settlement Agreement. The objectively manifest meaning of subsection 21, when read in context of the entirety of Section M, unambiguously provides that the Agreement and "the relief to be offered" thereunder shall not be construed to *otherwise* alter the contractual terms of the underlying policies or to constitute a novation thereof. This reading of Section M.21 is one which is harmonious with the entirety of the Agreement, whereas Plaintiff's reading of Section M.21 would effectively nullify the entirety of the Settlement Agreement's release provisions – leading to an absurd conclusion that the *Oakes* parties' Agreement boils down to nothing.[3] In short, the undersigned is unpersuaded by any of Plaintiff's suggestions of ambiguities that might justify his requests for the production of extrinsic evidence.

In light of the findings and conclusions described above, the undersigned will now turn to Plaintiff's individual discovery requests. Through RFP No. 67, Plaintiff seeks "all documents relating to the settlement of *Oakes*." *See* Ltr. Br. (dkt) 101 at 11. Compounding the problematic nature of the overwhelming breadth of this request, and the passage of 20 years since the settlement in *Oakes*, Plaintiff's portion of the letter brief falls woefully short of satisfying his burden to explain the relevance and proportionality of this request in light of the currently narrowed scope of discovery and the unambiguous nature of the *Oakes* Settlement Agreement. *See id*. at 4. In summary fashion, Plaintiff submits that he seeks "[e]xchanges between opposing counsel," as well as "'[s]cripts for the Claims administrator, agents and customer service

---

[3] "When the provisions of a contract appear to conflict, we will attempt to harmonize the two provisions and assume the parties intended every provision to have some effect." *United Protective Servs. v. W. Vill. Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex. App. 2005) (citing *Edlund v. Bounds*, 842 S.W.2d 719, 726 (Tex. App. Dallas 1992, writ denied) (when provisions of contract appear to conflict, they should be harmonized if possible to reflect intentions of parties, so that the entire agreement can be given effect)). Therefore, because "the application of pertinent rules of interpretation to the face of the instrument [does not] leave[] it genuinely uncertain as to which one of two or more meanings is proper," Plaintiff's fourth example of a supposed ambiguity is equally unpersuasive. *See Maxwell*, 674 S.W.2d at 801.

1    representatives to help them explain the settlement to potential class members, and [how] the other
2    circumstances of the settlement bear on the settlement's latent and actual ambiguities. They
3    provide objective information. They are relevant . . . [and] Hegarty cannot get this material from
4    the *Oakes* class' attorney [because] [h]e died and his files were destroyed." *Id*. For the reasons
5    described above, Plaintiff's request to compel this extrinsic material is **DENIED** because Plaintiff
6    has failed to meet his burden to establish relevancy or proportionality.

7          Through RFP No. 28, Plaintiff seeks all documents relating to the reduction in amount or
8    elimination of the payment of persistency bonuses to increase the profitability of direct recognition
9    life insurance policies, while noting that this request is not limited to the relevant period. *See* Ltr.
10   Br. (dkt. 101) at 9-10. In justifying this request, Plaintiff only states that "discovery relating to
11   Transamerica's analyses of whether to eliminate or reduce persistency bonuses is relevant to its
12   intent with respect to entering and its subsequent understanding of the settlement, as well as what
13   was discussed in the negotiations." *Id*. at 4. Given that the scope of discovery has been limited to
14   whether or not Plaintiff's claims are barred by the Settlement Agreement in *Oakes*, the
15   undersigned finds that Plaintiff has failed to meet his burden in establishing either relevance or
16   proportionality for the information encompassed in RFP No. 28; accordingly, Plaintiff's request to
17   compel this material **DENIED**.

18         Plaintiff then lumps several discovery requests together: RFP No. 1 (all documents relating
19   to the amount of reserves Defendant established each year for all direct recognition life insurance
20   policies in force during the year); RFP No. 21 (all documents relating to any statement of
21   operations that Defendant filed or otherwise delivered to any state insurance commissioner
22   regarding any direct recognition life insurance policies – not limited to the relevant period); RFP
23   No. 38 (all documents referring to the total amount of surrender charges Defendant received each
24   year for direct recognition life insurance policies surrendered during the year); RFP Nos. 84 & 85
25   (all documents relating to illustrations issued on or after September 1, 2000, or procedures that
26   Defendant followed after September 1, 2000, for direct recognition life insurance policies
27   containing either guaranteed or non-guaranteed persistency bonuses). *See id*. at 8-9, 10-11, 12-13.
28   In justifying these requests, Plaintiff only states that discovery related to the post-*Oakes* conduct

7

of Transamerica and its predecessors-in-interest is relevant to their intent in entering, and their understanding of, the Settlement. *Id*. at 4. Plaintiff also adds that "after *Oakes*[,] Transamerica sent illustrations to DRL [p]olicy [o]wners that showed the unqualified payment of [p]ersistency [b]onuses, thereby indicating its understanding that these [b]onuses had not been eliminated by *Oakes* . . . [and further that] the intent discovered through the RFPs at issue bears on whether the post-*Oakes* illustrations sent Hegarty were fraudulent." *Id*. First, there is a great deal of disconnect between the sweeping breadth of Plaintiff's RFPs, and the narrow justification to the effect that Plaintiff seeks an explanation for one or more illustrations sent to him sometime after the *Oakes* Settlement – rendering the RFPs wildly disproportionate to the needs of the case. Second, Plaintiff has once again failed convince the undersigned that there exists any logical relevancy, given the narrowed scope of discovery, for these RFPs by his statement that the post-*Oakes* conduct of Transamerica and its predecessors-in-interest is relevant to their intent in entering, and their understanding of, the Settlement. In other words, Plaintiff's effort at establishing relevancy is founded on the faulty premise that the *Oakes* Settlement Agreement is ambiguous such that extrinsic evidence of the *Oakes* parties' intent is needed to understand the Agreement. As discussed above, there is no such ambiguity; accordingly, Plaintiff's request to compel the materials encompassed in RFP Nos. 1, 21, 38, 84, and 85 is **DENIED**.

Lastly, through RFP No. 94, Plaintiff seeks all transcripts of depositions taken to date in the unrelated case of *Helmer v. Transamerica*, Case No. 4:17-cv-3129-JSW. *See* Ltr. Br. (dkt. 101) at 13. In support of this request, Plaintiff only states that "nothing in Transamerica's opposition shows [that] the transcript is not relevant . . . [and that] [a]ny legitimate *Helmer* privacy issues can be handled by redaction." *Id*. at 4. Defendant explains that "*Helmer* involved different insurance policies and policyholders, and the deposition, taken pursuant to a protective order, was a 30(b)(6) deposition that was never completed and remained open when the case was settled [and] Transamerica had no opportunity to elicit testimony from the witness or seek the adjudication of objections . . . [but in any event] [t]he transcript is particularly irrelevant at this stage of limited discovery because the Court cannot consider it when construing the *Oakes* release." *Id*. at 5-6. Defendant also points out that the proper procedure for seeking the release of a

transcript in *Helmer* is to seek to intervene in that case and then to persuade Judge White to modify the protective order in order to obtain that transcript. *Id*. at 6. However, Plaintiff has not explained how "all transcripts of depositions taken to date in *Helmer*" (*id*. at 13) are relevant to the issue at hand or proportional to the needs of this case. Instead, Plaintiff appears to shift his burden to Defendant – seeking to impose a burden of demonstrating irrelevancy on Defendant – because Plaintiff only notes in this regard that: (1) "nothing in Transamerica's opposition shows the transcript is not relevant" and, (2) that *Helmer* is a suit for non-payment of persistency bonuses similar to *Hegarty*'s. *Id*. at 4. For that reason, as to RFP No. 94, the undersigned finds that Plaintiff has failed to meet his burden in establishing relevance or proportionality; and, in addition to the other reasons expounded in Defendant's portion of the jointly-filed letter brief (*see id*. at 5-6), Plaintiff's request to compel the deposition transcripts in *Helmer* is **DENIED.**

**IT IS SO ORDERED.**

Dated: October 21, 2021

_____
ROBERT M. ILLMAN
United States Magistrate Judge